Our next case our last case on the docket today is 5 dash 25 dash 0 5 0 8 in rate of commitment of Freddie Miller. I said this earlier I'm about 0 5 with getting names correct today, so I'm gonna Let you state your name because I don't want to butcher Thank you so much, we've gotten this Polinsky here. She's been here before So are you ready to proceed go right ahead? My name is Donna Polinsky. I was appointed to represent mr. Miller in in this appeal after being found sexually violent By the circuit court of st. Clair County The issues before the two issues before us today are whether the state proved beyond a reasonable doubt the third element in section 207 slash 5 parentheses F and number two whether the trial court erred in committing mr. Miller to the treatment and detention facility which I'll call TDF on Conditional release or CR we use a lot of abbreviations in these cases in traffic trial court The third of the first two elements I won't go into detail because those those were proven those were established That is that mr. Miller has an underlying criminal offense Criminal conviction under the SVP Act and number two whether he has an underlying mental health disorder as set forth in the act Has set forth in the act the third element is is the question here whether that mental disorder makes it substantially Probable that mr. Miller will commit future acts of sexual violence We believe the state failed to prove that he was substantially probable to engage in those future acts of sexual violence Our Supreme Court has found that a respondent cannot be involuntarily committed based on past conduct only present conduct or present what they presently suffer from He must presently suffer from a mental disorder. And again, that disorder must make him substantially probable to reoffend or commit other acts of sexual violence We don't dispute that he presently suffers from a mental disorder that was that was established by all three experts that testified in this trial but if the state cannot prove this or if the evidence is Insufficient to find that the respondent is more likely than not are substantially probable to commit future acts of sexual violence Holding him would be basically Punishing him for past conduct in this case the X there were three experts But first before I get to the testimony I'd like to touch on what substantially probable means in doing these in trying these cases in the circuit court level We try to establish what substantially probable means As you are well aware, we can't use a percentage just like with beyond a reasonable doubt, which the state must prove beyond a reasonable doubt in these cases Whether they have they fit the criteria under the act we can't put a percentage on substantially probable But what our courts have done is as they have indicated that Substantially probable means much more likely than not Not more likely not I'm more likely to have steak and chicken on any given night Much more likely that word much is huge because that means that that's more than just maybe maybe not I'm much more likely to get a good night's sleep tonight than I did last night Because I don't have to come back and argue tomorrow That word is huge much Focusing on the state's brief and what I've just indicated to you now, I believe their argument fails Their arguments can be boiled down. I think to two things One because dr. Nikolai the expert that testified that mr. Miller did meet the criteria because miss because dr. Nikolai says it's true. So it is Without looking at what the other two experts say And apparently the trial court did too the crux of that argument though is Basically, listen to what my expert listen to what dr. Nikolai said don't pay any attention to the two other experts behind the curtain don't don't think about what they said because if you do I Don't believe you meet the standard of much more likely than not Nor beyond a reasonable doubt It Should be noted that in the trial court's order there wasn't a The the trial this was a bench trial. So there wasn't a jury verdict The trial court didn't indicate whether She did or did not credit the other two experts testimony whether she found that Not something that she could consider there it was just a summary of what the doctors testified to what they found and what they opined and That she found beyond a reasonable doubt that he met the criteria The state sites in recommitment of white around page 22 of their brief They state that the evidence is sufficient for a finding of SVP Even though the defense expert disagreed with both of the state's experts White dealt with an individual he not only did he score much higher of five versus eight on actuarials Second but it was also to state experts that stated or testified that he was Much more likely to commit future acts of sexual violence and one expert that said he was not Isn't that the same here and the opposite? I couldn't you say that The evidence was insufficient for findings for finding. Mr. Miller a sexually violent person Even though the state's experts said he was To me that's reasonable doubt and to me that doesn't Get you past the hurdle of whether or not he's much more likely than not to commit future acts of sexual violence And I also I should be noted here If I'm sure that that the court is well aware that in these cases Prior to someone's released from prison if they've had an underlying criminal offense under the act they are Evaluated by a psychologist from Wexford Health, but it's a psychologist that is is Deemed an expert in this field if that person that expert finds that the individual meets the criteria The individual is held over for a probable cause hearing basically That's the first step at the probable cause hearing the only testimony is of that one expert if the trial court finds that that one expert is credible and Determines that the individual should be held over that person then is held over at the treatment and detentions facility the TDF Until trial at that point the state has a second expert that is it's not technically appointed But they under the act they get another expert that expert then does the same evaluation or at least similar Same have the same credentials, etc. And they do an evaluation of the individual and they do these reports Once that report comes then the defense gets it or the respondent gets an expert appointed on his behalf To to do an evaluation and the exact same thing so all three experts in these cases do the same thing The conclusions that they come to all of the cases I believe that I cited and the cases that the state cited and in in her brief Are except for one case where all two experts stated that the individual was? Sexually violent and one expert says that they're not There was one case that was cited and I have to look it up. That was one versus one There were only two experts that testified The state argues here that dr. Dawn and what I should say is that dr. Cousio who was the who testified that mr. Miller didn't meet the criteria was not an expert for respondent Of course the respondents attorney called him and to testify because his opinion was that mr. Miller did not meet the criteria The state argues that dr. Nicholai thoroughly explained the basis of her opinion And therefore I guess that means it's beyond a reasonable doubt that they've proven their case But so did drs. Cousio and Rozelle. They both Thoroughly explained the basis for their opinion. They all testified Pretty much the same that the order is the same they testifies to their person their qualifications as an expert If they are deemed an expert by the court Then we move forward to what their procedure is in evaluating these after they testify the number of Times they've testified in court All of them did the same thing. They all reviewed the criminal records. They all reviewed the background of the individual They all reviewed the DOC records TDF records And then made their evaluation based on on all of that information They all scored the same actuarials they score what's called some use different ones In addition to the static 99 arms, but what the main? actuarial instrument is that scores the person on the risk of recidivism based on 10 to 12 criteria that they go through number of partners number of criminal offenses that are not sexually violent nature Whether they're male or female victims, etc All three experts in this case scored. Mr. Miller the same. They all scored him a 5 out of 12 on actuarials They all did the review of his past criminal history and they all Diagnosed him with pedophilic disorder The state then says that the evidence sufficed because Nikolai Testified about the requirements of the SVP Act and concluded that respondent met them Met them. She also opined his mental disorder makes him substantially probable to engage in acts of sexual violence Then the state argues that the experts testimony meaning dr Nikolai when viewed in context plainly linked respondents substantial probability to reoffend to his mental disorders The same again and the opposite can be said for doctors And Roselle in their testimony when viewed in context They did not link respondents mental disorder to a substantial probability to reoffend if released The two both dr. Kuzia and dr. Roselle did testify as to the requirements of the act Again, I'm not going to go through all of the things that I've already indicated that they do and in fact, dr. Kuzio testified that Mr. Miller's mental disorder and reoffending was too big a leap Too big to leave to say that just because of his mental disability. He was going to reoffend Dr. Roselle Indicated that he asked he didn't say too big a leap, but he indicated that There was not a substantial likelihood or money It was not much more likely than not that he would reoffend because the offenses happened 30 years prior There was one conviction one case was dismissed an 82 case 92 case was dismissed the 2005 case was he was convicted on and that time There are other factors in those actuarios that would apply the fact that he was 30 years older people can change the two doctors Dr. Kuzia and Dr. Roselle did testify quite a bit about mr. Miller's antisocial personality disorder Which was the second diagnosis that all three doctors gave to mr. Miller all three experts went through those things and dr Nikolai indicated that that would make him more probable to commit acts of sexual violence Versus both dr. Kuzia and dr. Roselle who indicated that I'm sorry. I thought you had a question that both of those doctors indicated that the dynamic risk factors present with mr Miller did not make it more likely that he would offend the dynamic risk factors are in addition to those actuarial scores based on things that can change the Actuarials are on things that cannot change what's happened in the past the dynamic risk factors are things that can change for instance 30 years have gone by treatment medical conditions things like that well, that's this council because Obviously the court had three witnesses three expert witnesses talk about how they came to their findings their actuary tables all these dynamic risk everything the court had all of that and as in any case where you have I would say like dueling experts it comes down to The trial court making the finding what they find to be credible what might not be credible and making that decision Which is what the trial court did given all of this information and the standard of review I believe is you know the trial court's findings are given deference When making these credibility and these assessments given these experts correct correct yes, so how do you get past that? Well, that is that it's not retrying the case or rehearing the evidence. It's It I find it hard to explain this in my head But I find it hard to explain because you've got you do have the trial court that is sitting there listening to the evidence But in this particular case the judge did not go through and indicate. What was wrong You know for lack of a better way to put it. What was wrong with dr.. Roselle and dr. Kuzia they were not they were they're just as much an expert as dr. Nikolai, they were not it appears that their testimony was just pushed to the side and not considered whatsoever And I believe if you have three experts and to say one thing and one says another I'm not sure how you get past reasonable doubt there And I believe that the trial counsel in his closing arguments summed it up the best when he said Two experts saying that Miller did not meet the criteria and one saying he does is the definition of reasonable doubt I would go further when is the reasonable doubt if it's not two versus one into three is it ten? Do you have to have 20 experts saying he's not and one saying he is for you to say I think we got reasonable doubt here In this case the two respondent experts Kuzia and Roselle both said on the static 99 are He was a five one said he's a four, but maybe five was more accurate five puts in the above average Also as this as the state points out and on page 11 of their brief on cross-examination Kuzia said he did not find dynamic risk factors present But then he admitted the fact that the defendant had between one and two hundred sexual partners He had various sexually transmitted diseases the exchange money for sex the frequent strip clubs But he had extensive criminal history that he did not factor those as dynamic risk factors, but the court obviously did More in line with dr. Nikolai, so does that not? Well, dr. Roselle answered that I can't answer to what dr. Kuzia was thinking in that he didn't I believe say in his testimony Having a sexual appetite does that make one? Sexually deviant it was with the deviance part. I believe that was what you're talking about there What what is the sexual appetite and does it make you deviant? Dr. Nikolai felt that it did dr. Kuzia didn't believed it didn't dr. Roselle. I didn't he considered that a Stat a dynamic risk factor, but he indicated that that was 30 years ago And gave that not as much credit as dr. Nikolai did I never find it. Thank you I guess I would request that the court reverse the trial courts decision, and I didn't get the argument to but Well, you know I'm sure you're having a time for rebuttal yes, you have any other before we let you go any questions No, thank you. No the questions. Thank you Good afternoon. I'm assistant attorney general Rachel Michaloshevsky on behalf of the people the court should affirm the trial court's judgment Both because the evidence here was sufficient and because the court did not abuse its discretion when entering the dispositional order in this case To spend most of my time on the first argument Appellant makes the sufficiency of the evidence challenge As your honor pointed out on appeal the standard of review is in the light most favorable to the people And here that basically controls the argument in this for this part of the challenge that respondent is bringing The court has to view the evidence in the light most favorable to the state when evaluating whether it was sufficient to demonstrate that respondent was a sexually violent person And just skipping to the third prong the question of whether or not it was substantially probable that respondent will engage in acts of sexual violence in the future The trial court could rely on Dr. Deborah Nicholas expert opinion here because It was a credible opinion and it took into account not just the I think the other thing that's important to note is there's not a lot of daylight between the experts themselves they reach similar opinions with the first two prongs And even in the question about the defendants or the respondents criminal history and the scoring on the risk assessment they draw similar conclusions Namely they score him a five on the stat of 99R which puts respondent in an above average risk category meaning that he is more than almost three times more likely to sexually reoffend compared to other sex offenders And Dr. Nicholas also in her opinion considered this history since the early 90s respondent has not spent very much time outside of prison When he has he's been repeatedly abusing young girls or he's been committing robberies and burglaries Which allowed Dr. Nicholas to diagnose him with pedophilic disorder and also antisocial personality disorder something that all the other experts agreed with Opposing counsel stresses that the standard here is that it's substantially probable that he will Reoffend sexually in the future and that is means that much more likely than not And the state doesn't disagree with that as a standard that is the correct standard but as even respondent acknowledges in his brief There's no mathematical formula for what that means rather it's a holistic examination of each respondent And here the evidence is very strong both from the diagnosis that the respondent had as well as the risk assessment and the dynamic factors here Here Dr. Nicholas found at least six different factors that elevated his likelihood of risk Something that Dr. Kuzia agreed with three of those factors One other thing that's important about the standard review at this point in time is that it's not just a matter of counting How many expert witnesses say one thing versus another The appellate court here does not re-weigh the evidence rather they rely on the credibility determinations the trial court had And even if you have an expert witness that says one thing and two that say the opposite It doesn't automatically mean that the evidence is insufficient especially not on appeal when the standard is the light most favorable to the people Finally, so based off of all of these three sources The diagnosis, the actuarial scores, the dynamic risk factors Dr. Nikolai was able to conclude that the respondent was substantially probable to commit future acts of sexual violence And therefore viewing the evidence in the light most favorable to the people, the people's evidence here was sufficient to determine that the respondent was an STP I'm going to briefly turn to the commitment order There the trial court did not use its discretion either in ordering secure treatment Both experts considered the factors listed out in the STP act that a court needed to consider First, the behavior that was the basis of the allegation of the petition The person's mental history and present mental condition and the available arrangements to participation in necessary treatment The respondent here argues that the trial court failed to consider his present condition But that wasn't the case. They heard testimony from both experts And the state's expert testified that the respondent had not yet participated in any treatment And currently was resistant to participating in treatment in the TDF He even stated that he would not participate in treatment And because he had not begun treatment, he had not yet understood his cycles or triggers to be successful on conditional release Respondent also argues that the trial court failed to consider community arrangements But there's also no evidence of that in the record Therefore the court did not abuse its discretion in committing the respondent to secure care And therefore this court should affirm the trial court's order Again, like I said, in the scheme of life, I want to make sure you're okay Yeah, I am fine I'm just a little embarrassed now So to conclude my remarks on the dispositional order aspect Respondent here argues that the trial court failed to consider different community arrangements But there's no evidence in the record that the trial court failed to consider that type of evidence They heard testimony recommending secure treatment in CR And the trial court from the state's expert, which is more convincing, that's the trial court's prerogative The trial court's testimony undercut the possibility of conditional release And the trial court, in fact, referenced the possibility of him moving to a different state Yeah, let's Have a seat, folks We were just talking, and here's what I'll say We greatly appreciate you wanting to continue and you wanting to be at this podium And respectful to this court It's not lost on us However, if God forbid something else would happen and you were to fall down and hit your head on the side of that desk or something And hurt yourself I want you to continue if you want to But, as I said, it's our courtroom today And we would rather you sit at your table, finish your argument Because, like I said, God forbid if something were to happen We don't want you to somehow get hurt And we do resent court all the time where you're at a table And to keep it fair, I don't want to speak for justice, but we're going to have opposing counsel do it from the table also And we can do it from your counsel table That way you're not sitting down below this podium I really think Clerks have been so kind to give me a fan I don't feel lightheaded right now at all. I promise you I will sit down if I feel that way If it's okay, I would like to finish at the podium I think it's not okay. I think I want her to sit at the table It happens all the time. Judges direct arguments from counsel table instead of podium It may seem unusual in this room, but across the state of Illinois, judges have the attorneys argue From the table instead of the podium all the time for a variety of reasons And again, we totally appreciate the respect We don't take any negative connotations from either absolute or not Courtney, can she see the timer light from there? Or do we need to move it down to the side? Thank you for your patience. I'd like to turn back to the argument Just briefly about the committing order And all these factors Made it difficult to participate in treatment outside of a secure facility And the trial court didn't abuse its discretion in crediting that expert Responding to your argument is brief. The trial court failed to consider this present condition There's no evidence of that in the record. The court heard testimony from a respondent As well as both experts on this present mental condition And the fact that the older instances were referenced in the hearing doesn't violate the statute or the consideration of those statutory factors The statute itself required the judge also consider the person's mental history as well as their present condition And any arguments that mental history got too much weight Or that one expert's opinion got more weight than another is also improper Because appellate courts cannot re-weigh the evidence. Respondent also argues that the trial court failed to consider community arrangements But there's also no evidence in the record of that The court heard a dispositional hearing testimony both recommending secure treatment and recommending CR And the trial court found the state's experts to be more convincing In fact it wasn't just the state's experts that might have drawn this conclusion Respondent testified and his testimony undercut a possibility of conditional release Because he had referenced moving to another state as being possible with conditions in a conditional release And he stated that he's not doing treatment, he would not do treatment in a TDF And he would prefer to do treatment on the slide on conditional release These remarks will combine the state's experts' opinion likely to make the court doubt that community arrangements would be effective Therefore the court did not abuse its discretion when it committed respondent to secure care In conclusion this court should affirm the circuit court's dispositional order as well as the judgment that the respondent is an SCP Thank you very much Any questions? No questions Thank you Your Honor, with respect to the first argument As counsel indicated, the actual arguments were also the same I believe there was a statement made that initially what Dr. Rizzo and Dr. Cruz used scored lower But based on the record, there's great detail on the elective insurance case Or the imminent case, where the mom was a cousin, but maybe a second cousin And whether they were familial members or not Because that determines a point or two on the actuarials If it's a non-relative, there's less likely recidivism Dr. Rizzo said 5 doesn't make it substantially probable In his testimony he indicated that 12.9% of those who support 5 reoffend And he does not believe that rises to the level of much more likely than not or substantially probable For someone who's supportive of 5 to reoffend With respect to the second argument, the committment order The trial court obviously considered Dr. Moyer's testimony in that Dr. Rizzo testified that he believed that after he reviewed each of the rules And in these cases, there's I think 54, 52 rules that are in the space that they follow through With an AR review several times with the individual who might be placed on conditional release Dr. Rizzo believed that a review of those rules and discussing those with Mr. Moyer He could have locked on the rules and that he would be able to successfully be ICR The infractions were minor at the TDF And Dr. Rizzo noted that they were minor infractions He never had an infraction for a ticket as they call it at DOC for any type of sexual offense They were more of the generic minor kind of infractions Dr. Rizzo said that although he violated a couple of those rules a few times at the TDF He believed that there's a big difference between violating in a facility and violating in a community In a facility, the consequences are you remain in the facility You might lose a privilege or something like that If you engage in a group of violations in a community, then you lose your liberty So the consequences are much greater on CPR And after discussing all of that with Mr. Moyer, Dr. Rizzo believed that he could be contained or Successfully managed, I believe is the term they use, on conditional release Further, Dr. Rizzo indicated that the behavior that labels him as a sexual violent person occurred over 30 years ago And that the arrangements in the community would be sufficient and he would be able to do both Now, although Dr. Kousia did not testify at the constitutional hearing during his testimony at trial He indicated or he testified that Mr. Miller could do treatment while on conditional release It is actually a bunch of rules and the rules that they have to follow regarding their treatment What they have to do, what they can't do, how many times a week they go, where they go They are picked up and taken to each of these appointments, they miss them or they're abused They arrive back at the TDF But Dr. Kousia indicated that he thought he could do well in treatment He also testified that there was evidence that he had participated in ancillary groups Not the high phase program at the TDF But he could be managed on CR with treatment and that he thought he could do well on CR Finally, Mr. Miller did testify at his dispositional hearing He did admit that he had been engaged in treatment at the TDF And he indicated based on a lot of the respondents that are at the TDF That it doesn't issue anymore, that they're there forever He told them, he indicated in his testimony on the record on page 47-48 That he wouldn't do treatment while on CR He believed that treatment based on what he knew about the treatment Would be much better for keeping him on CR and following straight and narrow In our brief, I'm not requesting that the court re-weigh all the evidence from the trial case I'm requesting that the court look at all of the evidence And find that, number one, Mr. Miller does not meet the criteria That it is not substantially probable or much more likely than not Based on the evidence of all three experts that he will re-offend And therefore the state failed to prove him beyond a reasonable doubt And secondly, if the court does determine that he does meet the criteria Then the trial, that this court remanded his case for him to be placed on conditional liability Do I have any more questions? No, thank you No questions, thank you Thank you, counsel Honestly, we'll take the matter under advisement We will issue an order of due course